# PUGET SOUND POWER & LIGHT COMPANY ET AL. *v.* COUNTY OF KING ET AL.

### ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 138. Motion to dismiss or affirm submitted January 2, 1924.— Decided February 18, 1924.

1. The time allowed, by the Act of September 6, 1916, for a writ of error from this Court to review a judgment of a state court, begins to run from entry of the formal judgment of record in the state court, and not from the previous filing of the court's opinion and decision. Procedure in the State of Washington considered. P. 23.
2. A party who did not raise a federal question in the state courts cannot come here by assigning error jointly with another party who raised it. P. 25.
3. The property of a street railway company, in view of its peculiar character, may be classified differently from property of commercial steam railways, for state taxation, without violating the Fourteenth Amendment. P. 26.
4. A law of Washington providing for taxation of all the operating property of street railways, as personalty, though consisting partly of real estate, and thereby depriving the owner of certain advantages as to time of payment, rate of interest and redemption allowed other owners of realty,—*held* not arbitrary. *Id.*
5. The Fourteenth Amendment does not impose on state taxation a requirement of equality so rigid that the legislature may not adjust its measures in view of the practical, as well as theoretical, incidence of taxation. P. 28.

117 Wash. 351, affirmed.

ERROR to a judgment of the Supreme Court of Washington which affirmed a judgment of a lower court dismissing the complaint of the Puget Sound Power & Light Company and the cross complaint filed by City of Seattle against its co-defendants, in a suit by the Power & Light Company to enjoin collection of taxes on its street railway property.

*Mr. Howard A. Hanson* and *Mr. Malcolm Douglas,* **for** defendants in error, in support of the motion to dismiss or affirm.

*Mr. James B. Howe, Mr. Frederic D. McKenney, Mr. Thomas J. L. Kennedy, Mr. Walter B. Beals* and *Mr. Walter F. Meier,* for plaintiffs in error, in opposition to the motion. *Mr. Hugh A. Tait, Mr. Edgar L. Crider, Mr. Norwood W. Brockett* and *Mr. Edwin C. Ewing* were also on the brief.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The Puget Sound Power and Light Company owned a street railway, part of which was in Seattle. This part it sold to the City in 1919. In the contract of purchase it was agreed that if when the deed was delivered any lien should have attached to the property for the taxes of 1919, it should not constitute a breach of warranty, and the tax should be paid in amounts proportioned to the parts of the year during which the parties were respectively in possession. The deed was delivered March 31, 1919, and possession then taken. On March 15, 1919, an assessment had been made by the Tax Commissioner of the State on the operating property of the street railway, including that part then contracted to be sold to the city. The Power Company brought this suit in the Superior Court of King County, Washington, against the County and its taxing authorities, the State Tax Commissioner, and the City of Seattle to restrain the collection of taxes under the assessment as illegal. The Superior Court dismissed the complaint. Its action was affirmed by the Supreme Court of the State and this is a writ of error to that court. The case comes before us on a motion to dismiss or affirm.

The first ground for the motion is that the writ of error was not taken within the time allowed by law. By the

Act of September 6, 1916, c. 448, § 6, 39 Stat. 727, it is
provided that no writ of error intended to bring any cause
for review to this Court shall be allowed or entertained
unless duly applied for within three months after entry
of the judgment or decree complained of. The Washing-
ton Supreme Court sits in two departments and *en banc.*
The Second Department filed its opinion October 15, 1921.
The case was reargued before the court *en banc,* which in
a *per curiam* opinion filed June 12, 1922, approved the
decision of the Second Department and affirmed the judg-
ment. On July 10th there was entered on the minutes
of the court the following:

*"Judgment.*

" This cause having been heretofore submitted to the
Court, upon the transcript of the record of the Superior
Court of King County, . . . and the Court having
fully considered the same, and being fully advised in the
premises, it is now, on this 10th day of July, A. D. 1922,
. . . considered, adjudged and decreed, that the judg-
ment of the said Superior Court be, and the same is,
hereby affirmed with costs."

The contention is that the *per curiam* opinion filed June
12th was under the constitution and laws of Washington
the judgment from which the time for allowance of the
writ of error from this Court began to run, and that the
period thus expired on September 12, 1922, whereas the
writ of error herein was not applied for until September
22nd. Under the law of Washington (§§ 10 and 11 of
Remington's Compiled Statutes of Washington, 1922) a
decision of a department of the Supreme Court does not
become final until thirty days after it is filed, during
which a petition for rehearing may be filed. If no rehear-
ing is asked for, or no order entered for a hearing *en banc,*
in the thirty days, the decision becomes final. If a hear-
ing *en banc* is ordered and had, as here, the decision is

final when filed; but in all cases where the decision is final, there is a specific provision that a judgment shall issue thereon. It is apparent that however final the decision may be, it is not the judgment. It is said that the latter is a mere formal ministerial entry of a clerical character, whereas the real judgment is the final decision. Whatever the effect of the distinction in the procedure of the State, which counsel seek to make, we are in no doubt that that which the Washington statute calls the judgment is the judgment referred to in the Act of Congress of September 6, 1916, *supra,* fixing the time in which writs of error must be applied for and allowed. The motion to dismiss the writ granted the Power Company must be denied

A separate motion to dismiss is directed against the City of Seattle which appears as a plaintiff in error with the Street Railway Company. It was made a defendant in the Superior Court by the Company. It filed an answer supporting the averments of the complaint and a cross complaint against its codefendants, asking the same relief as that asked in the complaint. It took a separate appeal to the Supreme Court of the State. No evidence appears in the record that it raised an objection based on the Fourteenth Amendment to the Federal Constitution or any other federal question in the Superior Court or Supreme Court. It is too late for the City to raise it in the assignment of errors in this Court, even though it joins in the assignment with the Street Railway Company which did raise such an objection in all the courts. *Sully* v. *American National Bank,* 178 U. S. 289, 297. It is difficult to see how, under *Trenton* v. *New Jersey,* 262 U. S. 182, and like cases, the City could have been heard as against the State to complain of state taxes on the ground that they violated the Fourteenth Amendment; but it is not necessary to decide this. The motion to dismiss the writ of the City must be granted for the reason first stated.

We come now to the motion to affirm the judgment against the Power Company. By objections seasonably taken before both state courts and in the assignment of errors, the Power Company questioned the validity of the Act of February 21, 1911, of the Legislature of Washington (Laws of Washington, 1911, p. 62) amending an Act of the same body of March 6, 1907 (§12, c. 78, Session Laws of 1907), under which the taxes complained of were assessed. Before 1911, the laws of Washington provided for a separate assessment of the real estate and of the personalty of a street railway. By the act of that year this was changed and it was provided " that all of the operating property of street railroads shall be assessed and taxed as personal property." The effect of this act, so far as the real estate of the street railway used in its operation was concerned, was, first, to fix the day of payment of the taxes as on March 15th in each year, in accord with the law as to taxes on personalty, instead of May 31st, the day fixed for the payment of real estate taxes, with an option in the real estate taxpayer to postpone payment of one-half of his tax until November 30th; second, to impose 15 per centum as interest after delinquency, instead of 12 per centum interest as on real estate tax delinquency; and, third, to authorize a sale of the property taxed on ten days' notice after delinquency, without any right of redemption, while the sale of real estate for delinquency is longer delayed and a period of redemption is reserved.

It is insisted that to make these differences between the taxation of real estate of a street railway and that of other railroads, other corporations and individuals, is to deny owners of street railway property equal protection of the laws.

The Act of 1911 treated the operating street railway property as a business unit, as a machine consisting of cars, tracks, street easements, wires, power houses and

all the parts of one system. More than half of this total is probably personalty. Much of the realty is mere easements in the streets. The assets of a street railway differ widely from those of the steam commercial railways that own the land upon which their tracks are laid, that have most extensive terminals and whose business is of a radically different character. A separate treatment of these two classes of railroads for taxation has been sustained by this Court because of these manifest differences. *Savannah, etc., Ry. Co.* v. *Savannah,* 198 U. S. 392. *Metropolitan Street Ry. Co.* v. *Board of Tax Commissioners,* 199 U. S. 1. A street railway is *sui generis.* It is not necessarily to be regarded as real estate. Its value is made of uncertain factors. When its franchise to do business expires, its easement in the streets usually terminates, and its rails become but scrap steel. We do not think, considering the very wide discretion a legislature has in such a case, that it was arbitrary to tax the whole street railway unit as personalty. That such a change in this case entailed no real hardship or arbitrary discrimination is shown by the fact that before the new method of treating street railway property was enforced, the tax agent of the street railway company for several years requested that realty and personalty be taxed *in solido.*

We are considering this case only from the standpoint of the Fourteenth Amendment to the Federal Constitution. The objections based on the state constitution of Washington have been settled adversely and conclusively for us by the decision herein of the State Supreme Court. Counsel cite us cases which have little relation to the federal question before us. *Johnson* v. *Wells Fargo & Co.,* 239 U. S. 234; *Ewert* v. *Taylor,* 38 S. D. 124; *State ex rel. Owen* v. *Donald,* 161 Wisc. 188, and like cases involved the application of somewhat stringent provisions of state constitutions as to equality of taxation on

all kinds of property which left but little room for classification. Such restrictions have much embarrassed state legislatures because actual equality of taxation is unattainable. The theoretical operation of a tax is often very different from its practical incidence, due to the weakness of human nature and anxiety to escape tax burdens. This justifies the legislature, where the Constitution does not forbid, in adopting variant provisions as to the rate, the assessment and the collection for different kinds of property. The reports of this Court are full of cases which demonstrate that the Fourteenth Amendment was not intended, and is not be be construed, as having any such object as these stiff and unyielding requirements of equality in state constitutions. No better statement of the unvarying attitude of this Court on this subject can be found than in the often quoted language of Mr. Justice Bradley, in speaking for the Court in *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237:

" The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State legislature, or of the people of the State in framing their Constitution. But clear and hostile discriminations

against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation."

Clearly there is nothing of an unusual character in the method adopted in this case for the assessment and collection of taxes upon street railways. The general practice of providing special methods of estimating the burden of taxation which this peculiar kind of property should bear is well known. and proves that it justifies a separate classification.

The judgment of the Supreme Court of Washington is

*Affirmed.*